# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 8, 1896.

EX PARTE TRUST ESTATE WILLIAM C. SIMMS, JR.

*A. J. Robinson* for exceptant.

*Edwin G. Baetjer* for Mrs. Reitz.

STOCKBRIDGE, J.—

On October 30th, 1895, William C. Simms, Jr., executed a deed of trust for the benefit of creditors to Adoniram J. Robinson in the usual form, whereby there passed to the trustee the stock of goods contained in a store at the corner of Hanover and Camden streets, in the City of Baltimore, the premises in which the assignor had been carrying on business as a retail grocer. The assignor, Simms, was not the owner of the premises, but held them as tenant of Mary S. Reitz, a widow.

Within a day or two following the execution of the deed, the landlord levied a distress for rent, claimed to be due, upon which the constable took possession, and remained in occupancy of the premises until the 7th day of November, 1895, when an agreement was entered into between Robinson, trustee, and the said Mary S. Reitz. Under the terms of the agreement the stock was sold by the trustee, and upon the proceeds of sale reported to the Court, the Auditor has stated an account, in which there is allowed to Mrs. Reitz on account of her claim the sum of $921.42, and to the action of the Auditor in so allowing the said claim exceptions were filed upon the part of the trustee.

At the argument it was urged that the exceptions in this case ought to be dismissed, for the reason that a trustee is not allowed either to except to a sale made by him; nor since he is trustee for all the creditors, whatever may be their legal rights, to an Auditor's account, by which there is a distribution of a trust fund among the creditors, or any portion of them.

If the agreement entered into in this case is referred to it is by no means clear that the landlord, Mrs. Reitz, can be heard to present such a motion under the terms of that agreement. If, therefore, that portion of the argument advanced on behalf of the exceptant be treated as a motion to dismiss the exceptions, it will be overruled.

For similar reasons, namely, as being covered by the agreement of November 7th, so much of the contention of the exceptant as relates to the distress proceedings taken by the landlord, whether with reference to the impounding of the goods or to the length of time that the constable remained in possession, will also be dismissed from consideration.

It is averred and not denied that the constable was in possession of the premises for a longer period of time than is contemplated under the distress statute, but he had not been there a longer time than the distress statute authorized when the agreement was virtually made, and the time elapsing between the verbal conclusion of the agreement and its reduction to writing, can not in equity and good conscience, and as carrying out the spirit of the agreement of November 7th, previously agreed to orally, be allowed to control in this matter.

There remains then but the single question for determination of these exceptions, namely: to ascertain the character of the tenancy of Simms; as, in case he was a tenant for a term above three months, then the landlord had the right of distress, the proceedings were properly had, and the exceptions must be overruled.

The original lease of the premises was in writing, and is "Exceptant's Exhibit No. 1," filed with the Examiner. It provides for a term of three years accounting from the first of June, 1892. Under it the lessees were Messrs. Simms & Beall, and some eight or nine months prior to the termination of the three-year term provided for by the lease Mr. Beall retired from his connection with the firm. There does not appear to have been at any time any formal action consequent upon his retirement upon the part of the landlord; any act by her or her agents which either annulled or modified the lease or relieved Mr. Beall of any of his legal responsibility thereunder.

It is true that thereafter the rent was demanded of and received from Simms, and that it was not demanded of Beall, but Simms continued to occupy the leased premises and had a stock of goods there, but there was nothing in the relation between Simms and Mrs. Reitz at that time, so far as appears from the testimony, which amounted to an annulment of the lease, or a discharge of Beall from his legal liability under the terms of the lease.

Sometime in February, 1895, at the request of Simms, the amount of the rent was reduced from $1,800 a year to $1,500 a year as testified to by the witness Myers, or as put by William Simms from $150 a month to $125 a month. This change in the amount of rent paid, is also claimed to have terminated the then existing written lease, and have raised up in its place a monthly tenancy. I can not agree with this view. It is not every modification of a lease which renders the entire instrument void, and even the modification of so vital a matter as a change in the amount of the rent to be paid, does not of itself terminate the lease.

Coe vs. Hobby, 14 N. Y. 163.
Coe vs. Hobby, 72 N. Y. 141.

To amount to anything more than a modification of the original agreement, there must be the clear, unmistakable intent of *both* the parties, and that does not exist in this case. The witness Simms, when interrogated as to whether he paid the rent for the interval between February and June under the terms of the written lease or the supposed new contract, answered, "both" (20 Interrogatory and Answer p. 5), and the witness Harry C. Reitz upon the same point says, the original agreement was never altered, only the rental was reduced in February (6th, 7th and 8th Interrogatories and answers, p. 34). Both parties therefore regard the original lease as in full existence, though with a modified rental from the 1st of February, to the 1st of June, when the tenancy expired by limitation, and in such a condition it is impossible for the Court to find that the original lease was terminated in February, and a new agreement formed.

What, then, was the character of the tenancy existing between the 1st of June, 1895, and the assignment by Simms to Robinson in October?

Counsel for Mrs. Reitz suggests that it was a renewal of the written lease for another term of three years. Such a tenancy would not be one of legal implication, but must result from the following provisions of the original lease:

"(c) That they will at any time before the expiration of this lease at the request in writing of the said parties of the second part to be made at least sixty days before the expiration of three years from the date hereof execute and deliver to the said parties of the second part a new lease for three years of the above premises, to commence on the expiration of the tenancy hereby created at the same rent and with the same agreements (save this agreement for renewal) as are herein contained."

There is no proof, however, that any such notice was ever given as is provided for in this clause of the lease, but, on the contrary, the witness Simms states a number of times that he notified the agent of the landlord that he should not renew the lease, and I am therefore not able to agree to the

proposition that the lease was renewed for a second period of three years.

Upon the part of the exceptant it is urged that after the first of June Simms had become a monthly tenant, but this contention is not supported by the evidence. As has been said before, the intent of *both* the parties, and their agreement, must be clear to constitute a new agreement of rental. The original lease was for a term of three years, thus raising the legal rights and liabilities of a yearly tenant, and to alter this relation to that of a monthly tenancy with its different rights and liabilities the intent and agreement of the parties must be shown. Simms nowhere testifies to any such change in the tenancy as of the first of June, his mind was apparently more concerned at that time with a contemplated business arrangement with Mr. Agnew, or with his financial embarrassments which had already begun to bear upon him, and his chief thought seems to have been to get the assent of his landlord to a few weeks or days more of grace, rather than entering into any new and definite agreement for a tenancy. The witness, William C. Reitz, testifies in the most positive manner that there was no new agreement (p. 58), while the witness, Harry C. Reitz, speaks of the tenancy as running along, that "he" (Simms) "then consented to run along." This is very far from establishing the agreement of the parties upon a new basis of a monthly tenancy, it shows and shows only the case of a tenant holding over. In such a case, under a lease like Exceptant's Exhibit Examiner No. 1 the law is well settled that the tenant holding over becomes a tenant from year to year.

12 Am. & Eng. Ency. Law, 676.

Vrooman vs. McKaig, 4 Md. 450.

Hall vs. Myers, 43 M. 446, and cases there cited.

The tenancy being a yearly one the right of distraint upon the part of the landlord is clear, and therefore for the reason set forth above, the exceptions of Adoniram J. Robinson, trustee, to the auditor's account filed April 17th, 1896, will be overruled and the account ratified.